# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00809-CV

---

### In re Elusive Holdings, Inc.

---

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

---

## M E M O R A N D U M   O P I N I O N

Relator Elusive Holdings, Inc. has filed a petition for writ of mandamus seeking relief from an order signed by the trial court on October 28, 2019, disqualifying Elusive's attorney, Tom Murphy, from representing the company in its lawsuit against former shareholder and real party in interest Jacob White. We will conditionally grant mandamus relief.

### FACTUAL BACKGROUND

In September 2019, Elusive sued White, Elusive's former Chief Operating Officer, alleging that White had violated a nondisclosure-confidentiality agreement and had taken property belonging to Elusive. It asserted claims for breach of contract and breach of fiduciary duty, sought injunctive relief, and asked for punitive damages and attorney's fees. White filed a motion to disqualify that reads in full:

> This Motion to Disqualify Attorney is brought by Defendant, Jacob White, who shows in support: That Mr. Tom Murphy has previously consulted and represented Defendant in matters which could make it impossible to adequate

maintain the Attorney/Client relationship in this proceeding. Defendant, Jacob White prays that the Court grant the Motion to Disqualify Attorney.

The trial court held a hearing on the motion, during which the court asked if White was going to put on evidence. White's attorney responded, "My client is here. He could testify, but I don't believe he needs to, to lay out the specific allegations." No evidence was presented, and the trial court only heard argument from the parties' attorneys.

White's attorney explained that White was one of two partners in Elusive, along with Justin Blackburn, and that Blackburn had ousted White. He further stated that attorney Murphy had been Elusive's attorney for some time and that:

> I know that [Murphy] has drafted numerous documents, but the subsidiary company, it's a essentially a group of LLCs, which includes Elusive Aviation, Trunnion Aviation, Trinity Growth Partners. Many of these he has actually drafted the formation documents for the subsidiaries. They all—well, four of them do list my client as the director. He consulted with the company daily on its runnings—or not daily—but periodically on its runnings. My client did reach out to him as general counsel for the company and [Murphy] did advise both Blackburn and Mr. White on the daily runnings of the company. Now, there's a dispute as to who owns the company and the valuation of the company, and essentially general counsel is representing one of the two equal owners.

Murphy then responded on behalf of Elusive, saying:

> I don't represent Justin Blackburn at all on this. I represent Elusive Holdings. Elusive Holdings is a construction company primarily doing business building restaurants in the state of Texas. Elusive Holdings has several subsidiary companies they had formed and stuff, and I did form some of those companies; but all that time was as a legal counsel for Elusive Holdings or those subsidiary companies, never Mr. Blackburn, never Mr. White during that.

2

Murphy explained that he had represented White in a private landlord-tenant dispute in 2017, when White was still an officer of Elusive. He also said that he had given White the names of several family lawyers for White's recent divorce proceeding. Murphy said,

> So that's the extent of my representation of him. I've always represented Elusive Holdings. I did not form Elusive Holdings. They already formed, came to me. I represented them in numerous construction matters, and then I have also formed companies that are subsidiaries and owned in part by Elusive Holdings. . . . There are currently two principal shareholders; Mr. Blackburn and Mr. White. Through the mechanisms of the company, Mr. White was—his employment was terminated, and he was ousted from the board. He's still a shareholder, so that's not the issue here. What the underlying lawsuit of this case is, Your Honor, is Mr. White signed a nondisclosure agreement and confidentiality agreement. We're alleging he violated that agreement, and we're also alleging that he took property of Elusive Holdings and he's maintaining it for himself. So the issues and the facts are entirely separate. There's no substantial connection. They're not substantially related and they're not substantially similar. There is no facts of my representation of Mr. White in the landlord-tenant case that would overlap into the dispute of him violating his nondisclosure and confidentiality agreement and the allegation of him taking property that's owned by Elusive. And that really is the standard here, Your Honor.

At that point, the trial court ruled that it was going to grant the motion to disqualify because it would not prejudice Elusive to retain new counsel at the early stages of the proceeding. It further stated that it was "so easy to slip into an attorney-client privilege relationship with someone even when we don't realize we're doing it; and, above all else, we need to avoid even an appearance of impropriety or a conflict." White had not brought an order for signature, so the trial court transformed the motion to disqualify into an order, signing the motion and writing on it, "Granted this 28th day of Oct, 2019." Elusive then filed its petition for mandamus relief.

3

## APPLICABLE RULES AND CASELAW

Disqualification is a severe remedy. The courts must adhere to an exacting standard when considering motions to disqualify so as to discourage their use as a dilatory trial tactic. Thus, the burden is on the movant to establish with specificity a violation of one or more of the disciplinary rules. Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice under this standard.

*Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990) (citations omitted); *see also In re Chonody*, 49 S.W.3d 376, 379-80 (Tex. App.—Fort Worth 2000, orig. proceeding).

As for the disciplinary rules, Rule 1.09 governs conflicts of interest between current and former clients:

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

(1) in which such other person questions the validity of the lawyer's services or work product for the former client;

(2) if the representation in reasonable probability will involve a violation of Rule 1.05 [governing confidential information and barring attorney from revealing such information]; or

(3) if it is the same or a substantially related matter.

Tex. Disciplinary Rules Prof'l Conduct R. 1.09, *reprinted in* Tex. Gov't Code, Tit. 2, subtit. G, app. A. Representation against a former client is not allowed if there is a "reasonable probability" that the representation would cause the lawyer to violate obligations owed to the

former client related to the use or disclosure of confidential information or if the representation involves the same or a substantially related matter. *Id*. cmt.

Meanwhile, Rule 1.12 governs representation of an organization: "A lawyer employed or retained by an organization represents the entity." *Id*. R. 1.12(a). The comments explain that an attorney "employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders or other constituents." *Id*. cmt. 1. Comment 4 to Rule 1.12 explains:

> There are times when the organization's interest may be or become adverse to those of one or more of its constituents. In such circumstances the lawyers should advise any constituent, whose interest the lawyer finds adverse to that of the organization of the conflict or potential conflict of interest, that the lawyer cannot represent such constituent, and that such person may wish to obtain independent representation. Care should be taken to assure that the individual understands that, when there is such adversity of interest, the lawyer for the organization cannot provide legal representation for that constituent individual, and that discussions between the lawyer for the organization and the individual may not be privileged insofar as that individual is concerned. Whether such a warning should be given by the lawyer for the organization to any constituent individual may turn on the facts of each case.

*Id*. cmt. 4. And the comments addressing derivative actions by members of a corporation seeking to compel directors to perform their legal obligations state:

> The question can arise whether counsel for the organization may defend such an action. The proposition that the organization is the lawyer's client does not alone resolve the issue. Most derivative actions are a normal incident of an organization's affairs, to be defended by the organization's lawyer like any other suit. However, if the claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with those managing or controlling its affairs.

*Id*. cmt. 10-11.

Finally, Rule 3.08, "Lawyer as Witness," says that, subject to certain exceptions, an attorney cannot act as an advocate in a proceeding if he "knows or believes" that he might be a "witness necessary to establish an essential fact on behalf of the lawyer's client." *Id*. R. 3.08(a).

## DISCUSSION

With those rules and standards in mind, we now turn to the issues at hand. Elusive asserts that the trial court abused its discretion by granting the motion to disqualify Murphy without having required White to show evidence requiring the disqualification, by not applying the proper "substantial relationship" standard, and by not stating the factors that established such a relationship. We agree.

Our review is abuse of discretion, *see Spears*, 797 S.W.2d at 656 n.3, but as noted above, White had the burden of showing "with specificity a violation of one or more of the disciplinary rules," *see id.* at 656. At the hearing, White's attorney vaguely referenced the conflict-of-interest rules when he stated that in this lawsuit, "essentially general counsel is representing one of the two equal owners." However, if seeking disqualification based on a conflict of interest, White had to show a "substantial relation between the two representations" *see NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 399-400 (Tex. 1989); *Chonody*, 49 S.W.3d at 379-80 (movant must establish "the existence of a prior attorney-client relationship in which the factual matters involved were so related to the facts in the pending litigation that it involved a genuine threat that confidences revealed to his former counsel will be divulged to his present adversary or used to his disadvantage"), or otherwise establish facts that could support

6

disqualification based on a conflict of interest. White, however, did not refer to the disciplinary rules or provide any evidence, much less raise the specter of a violation of the disciplinary rules. White did not argue or present any evidence that Murphy's representation of him in the real-estate dispute might have given Murphy any relevant confidential information or that the matters were in any way related. Nor is there a rule that general counsel for a company must be disqualified if a dispute arises between the company and an officer, and in fact Rule 1.12 provides to the contrary. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.12.

If White was arguing a Rule 3.08 conflict, he had the burden of establishing the likelihood of Murphy being a fact witness. *See Spears*, 797 S.W.2d at 656. "Mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice," *id*., and "[t]he fact that a lawyer serves as both an advocate and a witness does not in itself compel disqualification," *In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004). "Disqualification is only appropriate if the lawyer's testimony is 'necessary to establish an essential fact,'" *Sanders*, 153 S.W.3d at 57 (quoting Tex. Disciplinary R. Prof'l Conduct 3.08(a), and thus "the party requesting disqualification must demonstrate that the opposing lawyer's dual roles as attorney and witness will cause the party actual prejudice," *id*.

In his response to Elusive's petition for mandamus relief, White argues that Murphy could conceivably be a fact witness due to his work as Elusive's general counsel and his interactions with White in that capacity. White also speculates that the court "could have determined that [Murphy] is a key witness in the dispute between White and Blackburn who should be disqualified under" Rule 3.08 and that Murphy "has intimate knowledge of Elusive's operations, dealings between the two owners, circumstances of the ousting, and what Elusive's property and 'confidential information' that Blackburn alleges White stole and used for his own

7

purposes may include." However, as Elusive points out, this lawsuit is between Elusive and White—it is not a lawsuit between the two partners. Further, and more importantly, it was White's burden to establish such facts in the trial court, but he did not raise the possibility that Murphy might be a fact witness and never asserted, much less established, that Murphy would be called to testify about information he had learned during White's time as an Elusive executive. *See In re Lavizadeh*, 353 S.W.3d 903, 904 (Tex. App.—2011 Dallas, orig. proceeding) ("The trial court, having been presented no evidence of the necessity of [attorney] Turner's testimony, could not have reasonably concluded that Turner's testimony was necessary to establish an essential fact of the other relators' case.").

White also asserts that the trial court "was in a much better position than this Court to evaluate the evidence, balance the competing interests, apply the law, and reach a decision to disqualify Attorney Murphy." However, the supreme court has explained that a trial court should state "the precise factors" weighing in favor of disqualification. *See Coker*, 765 S.W.2d at 400. The *Coker* court held that when a party seeks to disqualify his former attorney from representing his opponent, the party must prove that his prior attorney-client relationship involved facts so related to the present case as to create a genuine threat that privileged confidences will be divulged, explaining, "Sustaining this burden requires evidence of specific similarities *capable of being recited in the disqualification order*." *Id*. (emphasis added). The trial court's order in *Coker* recited that the court "finds the subject matter involved in both representations are similar enough for there to be an appearance that the attorney-client confidences which could have been disclosed by the defendant might be relevant to the law firm's representation of the plaintiff in this suit." *Id*. The supreme court determined that the order was inadequate:

The vagueness of the court's order indicates that the substantial relation test was not used; had it been, the court should have been able to state without difficulty the precise factors establishing a substantial relationship between the two representations. To hold that the two representations were "similar enough" to give an "appearance" that confidences which could be disclosed "might be relevant" to the representations falls short of the requisites of the established substantial relation standard.

*Id.*

The order in this case provides no explanation, stating only that the motion was granted. Further, in explaining its ruling, the trial court stated that Elusive would not be prejudiced by having to retain new counsel, that it was "easy to slip into an atty-client privileged relationship with someone," and that attorneys should avoid an appearance of impropriety, but it did not indicate that it had considered White's burden under *Coker* and *Spears*.

## CONCLUSION

White notes that his motion to disqualify was filed and ruled on soon after the lawsuit was filed and that Elusive has since hired a new attorney, as ordered by the trial court, asserting that Elusive is thus not prejudiced by the trial court's order. However, "[m]andamus is appropriate to correct an erroneous order disqualifying counsel because there is no adequate remedy by appeal." *Sanders*, 153 S.W.3d at 56; *see In re EPIC Holdings, Inc.*, 985 S.W.2d 41, 54 (Tex. 1998) (appeal of ruling on attorney disqualification does not adequately remedy injury suffered by party).

On this record, White did not carry his burden of showing a violation of the Rules so as to meet the *Coker*/*Spears* requirements. The trial court thus abused its discretion in granting the motion to disqualify. We conditionally grant the writ of mandamus and order the

9

trial court to vacate its order disqualifying Murphy as Elusive's attorney. The writ will issue only if the trial court does not comply.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Baker and Triana

Filed: April 15, 2020